1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GONG-CHUN, individually, and on behalf of other members of the general public similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>AETNA, INC., a Pennsylvania corporation, AETNA LIFE INSURANCE COMPANY, a Connecticut corporation, and DOES 1 through 10 inclusive,<br><br>                    Defendants.<br>_____/ | CASE NO.   1:09-cv-01995-AWI-SKO<br><br>ORDER GRANTING DEFENDANT AETNA LIFE INSURANCE COMPANY'S MOTION FOR A STAY OF ALL PROCEEDINGS |

## I.  INTRODUCTION

On September 17, 2009, Plaintiff Michael Gong-Chun filed a class action complaint in Fresno County Superior Court.  The complaint sets forth four causes of action: (1) violations of California Labor Code §§ 226.7 and 512 for unpaid meal break premiums; (2) violations of California Labor Code §§ 201 and 202 for failure to pay wages upon termination of employment; (3) violations of California Labor Code § 204 for failure to pay wages timely during employment; and (4) violations of the California Business & Professional Code §§ 17200 et seq.

1

On November 12, 2009, Defendants filed a Notice of Removal to this Court.[1]   The parties' initial scheduling conference was calendared for January 14, 2010; the parties agreed to continue the scheduling conference to April 15, 2010,  in order to proceed with mediation.  Some informal discovery was provided to Plaintiff for the purpose of mediation, but no formal discovery has been received by Plaintiff.  *See* Plaintiff's Opposition (Opp.) Brief (Br.) at 3.8; Defendant's Motion (Mot.) at 9:3-11; Defendant's Reply at 11:4-12.[2]   On April 2, 2010, Defendant Aetna Life Insurance Company[3] filed a Motion to Stay all further proceedings in this matter pending the outcome of the California Supreme Court's review of *Brinker Restaurant Corp. v. Superior Court*, 80 Cal. Rptr. 3d 781 (Cal. Ct. App. 2008), *petition for review granted*, 85 Cal. Rptr. 3d 688, 196 P.3d 216. Docket No. 102.   In light of  Defendant's pending motion to stay, the Court vacated the initial scheduling conference set for April 15, 2010.

According to the complaint, Plaintiff is a former employee of Defendant who asserts that he was not allowed to take his meal breaks and was not reimbursed for his missed meal periods as required by Cal. Labor Code § 226.7.  One of the fundamental issues that could significantly affect the course of the litigation in this case is whether Defendant, as an employer, is required under Cal. Labor Code §§ 226.7 and 512 and the related regulatory provisions to ensure its employees take their meal rest breaks, or whether it merely needs to offer breaks to its employees.  Two California Court of Appeals decisions have established seemingly competing standards for compliance with the Labor Code's requirements in this respect.  *Compare Brinker Restaurant Corp. v. Superior Court*, 80 Cal. Rptr. 3d at 802 ("employers need only make meal

---

[1] Plaintiff named both Aetna, Inc. and Aetna Life Insurance Company in his complaint.  Aetna Life Insurance Company is a wholly owned subsidiary of Aetna, Inc.  Only Aetna Life Insurance Company was served.  The same counsel represents both named defendants.  Only Aetna Life Insurance Company files this motion, ostensibly because only Aetna Life Insurance Company has been served with the Complaint.  *See* Defendant's Notice of Removal at 1-2, Docket No. 1.

[2] Plaintiff confirmed at the May 7, 2010, hearing that he had received some informal discovery from Defendant, including the names of the putative class members who had not opted out of communication, Defendant's formal meal break policy, as well as a sampling of time keeping and payroll data.  Plaintiff disputes that this information is comprehensive.

[3] All further references to Defendant shall refer to Defendant Aetna Life Insurance Company.

breaks available, not 'ensure' they are taken"), *with Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 962-63 (2005) ("the defendant's obligation to provide the plaintiffs with an adequate meal period is not satisfied by assuming that the meal periods were taken, because employers have 'an affirmative obligation to ensure that workers are actually relieved of all duty.'") (internal citation omitted).[4]   The California Supreme Court has granted review in *Brinker* and is expected to address this issue.   Defendant asserts that *Brinker* will establish the standard of liability for employers in meal break claims and will have a dispositive effect on this case.

## II.  LEGAL STANDARD

A district court has the "power to stay proceedings" as part of its inherent power to "control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936).  In determining whether to stay an action, courts must weigh competing interests that will be affected by the granting or refusal to grant a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  Among these competing interests are (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Id.* (citing *Landis*, 299 U.S. at 254-55).

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708, 117 S. Ct. 1636, 137 L. Ed.2d 945 (1997) (citing *Landis*, 299 U.S. at 255). "If there is even a fair possibility that the stay . . . will work damage to some one else," the party seeking the stay "must make out a clear case of hardship or inequity." *Landis*, 299 U.S. at 255.

Pursuant to these standards, "[a] trial court may, with propriety, find it is more efficient for its own docket and the fairest course for the parties to enter a stay of an action before it,

---

[4] Certain district courts addressing this issue directly have limited the holding of *Cicairos*, determining that the quoted language is consistent with a duty merely to provide the right to take breaks, since the employer in *Cicairos* actively pressured its employees not to take breaks through its policies and compensation scheme. *See, e.g., Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008); *Brown v. Federal Express Corp.*, 249 F.R.D. 580, 586 (C.D. Cal. 2008); *White v. Starbucks Corp.*, 497 F.Supp.2d 1080, 1089 (N.D. Cal. 2007).

1    pending resolution of independent proceedings which bear upon the case." *Levya v. Certified*

2    *Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).  "This rule applies whether the

3    separate proceedings are judicial, administrative, or arbitral in character, and does not require that

4    the issues in such proceedings are necessarily controlling of the action before the court."  *Id*. at

5    863-64.  A district court's decision to grant or deny a *Landis* stay is a matter of discretion.

6    *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

7    Considering all of the foregoing, the Court weighs the relevant *Landis* factors as related to this

8    case.

9                               **III.   DISCUSSION**

10             After careful and considerable review of the parties' arguments, both written and oral,

11   related to Defendant's Motion to Stay all Further Proceedings, and weighing the relevant *Landis*

12   factors, the Court concludes that a stay in this matter is appropriate for the following reasons.

13   **A.      Possible Damage to Plaintiff Resulting From a Stay**

14             Plaintiff asserts that a stay would result in indefinite delay and would likely deplete the

15   number of witnesses Plaintiff's counsel could interview, and over time, the witnesses would be

16   more likely to move and discard potentially relevant documents.  Plaintiff's Opp. Br. at 7-8.

17             A stay, particularly a lengthy one, creates a danger that witnesses' memories will fade and

18   evidence will be lost.  *See Pagtalunan v. Galaza*, 291 F.3d 639, 642-43 (9th Cir. 2002)

19   (recognizing that unnecessary delay inherently increases the risk that "witnesses' memories will

20   fade and evidence will become stale").  This danger is inherent in any stay and is a factor that the

21   Court must consider.

22             In this case, several factors mitigate the risk that evidence will be lost.  First, staying this

23   case until the California Supreme Court issues its decision in *Brinker* would not be tantamount to

24   an "indefinite" stay.  Briefing before the California Supreme Court in *Brinker* is complete.  The

25   California Supreme Court has not scheduled oral argument, but it is highly likely that argument

26   will be heard in the next several months.  Further, according to its own internal operating

27   practices and procedures, the California Supreme Court issues its decisions within ninety (90)

28

1   days following oral argument.  *See The Supreme Court of California*, Part IV at 23 (ed. 2007),

2   *also available at* http://www.courtinfo.ca.gov/courts/supreme.  Accordingly, a stay in this case

3   will not be indefinite and may be relatively brief.

4       Second, Plaintiff has the names and contact information of putative class members who

5   did not opt out of communication and Plaintiff can elect to conduct interviews with those

6   potential class members or collect any documents those class potential members might have.

7   Moreover, Plaintiff has not asserted that formal discovery would, or possibly could, be

8   propounded on potential members of the class even if the litigation were to go forward.[5]

9       Third, Plaintiff has already been provided informal discovery that includes relevant

10  portions of Defendant's policy and procedures, a sample of class member timekeeping and

11  payroll data, and contact information of all putative class members who did not expressly refuse

12  such communications.  *See* Plaintiff's Opp. Br. at 3.8; Defendant's Mot. at 9:3-11; Defendant's

13  Reply at 11:4-12.   At the hearing on this issue, Plaintiff's counsel acknowledged that they had

14  received this information, but dispute that it is comprehensive.  Plaintiff, therefore, has some

15  discovery relevant to his claims.  Further, as a party to this litigation, Defendant has a clear duty

16  to preserve any other evidence in its possession.  *See Wm. T. Thompson Co. v. General Nutrition

17  Corp.*, Inc., 593 F.Supp. 1443, 1445 (C.D. Cal. 1984) (litigant under duty to keep or retain

18  evidence in his or her possession).

19       Plaintiff's asserted hardship is significantly mitigated by the fact that a stay of this case is

20  expected to be relatively brief, some informal discovery has been produced to Plaintiff, and the

21  potential class members' contact information is known to Plaintiff, thereby allowing him to elect

22  to collect evidence from those members, even while a stay is in place.  Given these factors, the

23

24       [5] Absent class members are not generally subject to discovery.  *See In re Carbon Dioxide Antitrust Litig.*,
    155 F.R.D. 209 (M.D. Fla. 1993) (nonrepresentative class members not subject to discovery absent showing of
25  particularized need for information that could not be obtained from class representative).  There are, however, some
    limited exceptions to this general proposition.  *See, e.g., Minnesota v. United States Steel Corp.*, 44 F.R.D. 559
26  (D.C. Minn. 1968) (representative of class allowed to seek additional information from absent class members);
    *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999 (7th Cir. 1971) *cert. denied*, 405 U.S. 921, 92 S. Ct. 957,
27  30 L. Ed. 2d 792 (1972) ("absent class members may, under certain circumstances, be required to submit to
    discovery under Rules 33 and 34").

28

1   Court finds that risk of potential harm to Plaintiff due to the risk of lost evidence does not weigh

2   heavily in favor of a stay.

3   **B.      Potential Hardship to Defendant Resulting From Going Forward**

4        Defendant asserts that it will suffer hardship if forced to proceed to discovery without the

5   benefit of the California Supreme Court's decision in *Brinker*.  Defendant contends that discovery

6   will be inefficient for both parties and will unnecessarily drive up the cost of litigation.  With the

7   standard of liability in question, Plaintiff cannot tailor its discovery requests and the parties will

8   be left to guess as to what should be sought and provided.   The parties could be conducting and

9   responding to discovery that is completely moot.  *See Minor v. FedEx*, No. C 09-1375 TEH,

10  2009 WL 1955816, at *1 (N.D. Cal. Jul. 6, 1009)(granting stay in light of *Brinker* and

11  determining that "[t]o the extent that both Plaintiffs and Defendants will be able to tailor

12  discovery and avoid duplicative or unnecessary tasks, this causes a benefit, rather than damage,

13  to accrue to both parties."); *see also Gabriella v. Wells Fargo Fin., Inc.*, No. 06-4347, 2009 WL

14  188856, at *1 (N.D. Cal. Jan 26, 2009) ("regardless of the outcome in *Brinker*, it is true that the

15  parties will seek, and be willing to provide, different discovery depending on the Supreme

16  Court's guidance in *Brinker*.").

17       Plaintiff suggests that discovery might be tailored and that Defendant can object to any

18  request it found potentially irrelevant due to the pendency of *Brinker*.  The Plaintiff asserts that if

19  the parties are unable to reach an agreement with regard to the relevancy of any request, the

20  parties can then present their discovery disputes to the Court.  Plaintiff's Opp. Br. at 10:18-22.

21  Plaintiff's offered compromise would unnecessarily create a greater need for judicial oversight,

22  would drive up the cost of litigation for the parties, and would burden judicial resources.[6]  *See*

23  *Leyva*, 593 F.2d at 864 ("A trial court may, with propriety, find it is efficient for its own docket

24  and the fairest course for the parties to enter a stay of an action . . . .").

25       Plaintiff also contends that, regardless of whether a stay is issued as to his meal break

26

27       [6] As the parties dispute whether they have met and conferred pursuant to the requirement of Rule 26(f) (*see infra,* at 8), the Court has little confidence that the parties would come to an agreement regarding discovery disputes related to *Brinker* without repeatedly availing themselves of the Court's guidance.

28

1    claim, litigation should proceed with respect to Plaintiff's claim that Defendant failed to pay

2    Plaintiff's wages timely upon termination of his employment, i.e., a late-pay claim.  Defendant

3    asserts that even if this claim is not directly derivative of Plaintiff's meal break claim, it too

4    should be stayed to avoid duplicative discovery and additional hardship on Defendant.

5    Defendant further asserts that its "person most knowledgeable" about Plaintiff's meal break

6    claim, located in Connecticut, would generally also be most knowledgeable about the claim

7    related to the failure to pay wages timely, and contends it would be unnecessarily costly and

8    inefficient to depose this person on two separate occasions.  Defendant's Reply Br. at 8-9.

9    Defendant's arguments are well taken in this regard – piecemeal discovery related to the late-pay

10   claim that potentially overlaps with the meal break claim would be highly inefficient.  Although

11   going forward with discovery does not create or impose inequity, Defendant has made out a clear

12   case of hardship as to conducting what could be inefficient or pointless discovery.  *See CMAX,*

13   *Inc.*, 300 F.2d at 268 (quoting *Landis*, 299 U.S. at 255); *see also Minor* 2009 WL 1955816, at *1.

14   **C.      The "Orderly Course of Justice" Favors a Stay**

15         The third *Landis* factor is a consideration of "the orderly course of justice measured in

16   terms of simplifying or complicating of issues, proof, and questions of law which could be

17   expected to result from a stay."  *CMAX, Inc.* 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254-55).

18   Plaintiff argues that *Brinker* will not be dispositive of his case and is not even certain to be

19   relevant; i.e., the evidence procured through discovery may show that Defendant had systematic

20   policies that prevent meal breaks from being "available."  Plaintiff's Opp. Br. at 10-13.

21   Defendant asserts that *Brinker* will definitively decide what type of discovery is relevant and

22   whether Plaintiff will be able to achieve class certification.  Defendant's Reply Br. at 9:8-14.

23         It is likely that the California Supreme Court's decision in *Brinker* will define the scope of

24   the employer's duty as to providing meal breaks under the California Labor Code.  In this respect,

25   a decision in *Brinker* may provide guidelines for discovery in this matter and dictate issues

26   related to class certification.  In the absence of precedent of the California Supreme Court, this

27   Court must apply the interpretation it believes that the court would adopt.  *See Wyler Summit*

28

*P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998).  However, as *Brinker* is presently before the California Supreme Court and will likely be decided this year, "[s]uch speculation [as to the proper standard] is unnecessary . . . ." *Lew v. Countrywide Fin. Corp.*, No. 08-1993, 2009 WL 1384975, at *2 (N.D. Cal. Feb. 24, 2009) (finding stay warranted in light of pendency of *Brinker* before the California Supreme Court).  Moreover, once *Brinker* is decided, this Court will be bound by it.  *See Ariz. Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995).

On balance, the *Landis* factors weigh in favor of granting a stay.  While the risk of lost evidence is inherent in every stay, Plaintiff's risk in this case is considerably mitigated by the fact that he has already received some informal discovery.  Defendant, as a party, has an affirmative duty to preserve any additional evidence that it possesses, and Plaintiff has the contact information of those putative class members who did not opt out of communication and may contact those individuals regarding any evidence they may have.  Defendant has stated a clear case of hardship related to inefficient and costly discovery without the benefit of the California Supreme Court's decision in *Brinker*.  Finally, a decision in *Brinker* will clarify an employer's duty to provide meal breaks pursuant to the California Labor Code and will likely impact not only the course of discovery in this matter, but also issues related to class certification.

## IV.  SCHEDULING CONFERENCE

The initial scheduling conference in this matter calendared for April 15, 2010, was vacated in light of Defendant's Motion to Stay.  On April 21, 2010, while Defendant's Motion to Stay was pending, Plaintiff propounded six (6) sets of Requests for Production of Documents upon Defendant.  At the May 7, 2010, hearing on this matter, the parties disputed whether they have met and conferred with regard to this scheduling conference.  Plaintiff asserts that the parties conducted considerable discussion regarding the course of litigation and has thus properly propounded discovery upon Defendant.  Defendant disputes that discussions between the parties related to the Rule 26(f) meet and confer requirement.

The Court notes that on November 13, 2009, it issued an "Order Setting Mandatory

1   Scheduling Conference Requiring the Parties to Confer Pursuant to Fed. R. Civ. P. 26(f)."  In its

2   order, the Court noted the requirement of Rule 26(f) that the parties must:

3       confer to consider the nature and basis of their claims and defenses and the
    possibilities for a prompt settlement or resolution of the case, to make or arrange

4       for the disclosures required by Rule 26(a)(1), and to develop a proposed discovery
    plan.

5

6   Given that the parties have already participated in mediation and have conferred regarding the

7   Motion to Stay, they have presumably conferred to consider the nature of the claims and the

8   possibilities of settlement.  However, in light of Defendant's Motion to Stay, it is unlikely that the

9   parties have fully discussed their mandatory disclosures required by Rule 26(a)(1) or have

10  developed a proposed discovery plan.  Moreover, following *Brinker*, additional conversations

11  regarding the course and timing of discovery will likely be necessary between the parties in order

12  to prepare their joint scheduling report that must be submitted to the Court seven (7) days prior to

13  the scheduling conference.

14      As such, when the California Supreme Court issues its decision in *Brinker*, the Court

15  will lift the stay and order a mandatory scheduling conference.  Following such an order, the

16  parties will have the opportunity to complete any remaining discussions regarding a proposed

17  discovery plan pursuant to Rule 26(f).  The response time for discovery already propounded by

18  Plaintiff will begin to run on the first calendar day following the Rule 26(f) meet and confer

19  conference between the parties, absent any further order of the Court.  *See* Fed. R. Civ. P. 26(d)

20  (unless authorized by order or agreement of the parties, no party may seek discovery from any

21  source before the parties have conferred as required by Rule 26(f)).  Until that time, the

22  proceedings are stayed and formal discovery is prohibited.

23      The parties are reminded that they are under a duty to preserve what they know, or

24  reasonably should know, is relevant to this action; is reasonably calculated to lead to the

25  discovery of admissible evidence; and/or is reasonably likely to be requested during discovery.

26  *See Wm. T. Thompson Co.*, 593 F.Supp. at 1455.  Further, during the pendency of the stay, each

27  party will provide the Court with status reports every ninety (90) days.  The parties are also

28

encouraged to file a status report with the Court, regardless of timing, when *Brinker* is decided.

## V.   CONCLUSION AND ORDER

For the foregoing reasons, the Court HEREBY ORDERS THAT:

1.      Defendant's Motion to Stay all Proceedings is GRANTED;

2.      Defendant's Request for a Protective Order Prohibiting Discovery Until the Stay is Lifted is GRANTED;

3.      The parties are each ordered to provide status updates to the Court as to the pendency of *Brinker* every ninety (90) days from the date of this Order.

IT IS SO ORDERED.

**Dated:     May 15, 2010**                                        /s/ Sheila K. Oberto
                                                        UNITED STATES MAGISTRATE JUDGE