# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GONG-CHUN, GLADIBEL SOTIL-GALLOUR, BRENDA BUCARIA, JEFF BRAGER, TANYA LEMONS, ELI CRUZ, individually, and on behalf of other members of the general public similarly situated, | CASE NO. 1:09-cv-01995-SKO |
| | **FINAL ORDER APPROVING CLASS ACTION SETTLEMENT** |
| | (Doc. No. 60) |
| Plaintiffs, | **GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS** |
| v. | (Doc. No. 60) |
| | **GRANTING MOTION FOR CLASS REPRESENTATIVE ENHANCEMENT AWARDS** |
| AETNA INC., a Pennsylvania corporation; AETNA LIFE INSURANCE COMPANY, a Connecticut corporation; and DOES 1 through 10, inclusive, | (Doc. No. 60) |
| Defendants. | |

## I.  INTRODUCTION

On April 24,  2012, Plaintiffs Michael Gong-Chun, Gladibel Sotil-Gallour, Brenda Bucaria, Jeff Brager, Tanya Lemons, and Eli Cruz ("Plaintiffs") filed a motion requesting final approval of a class action settlement, an award of attorneys' fees and costs, and for enhancement awards for

Plaintiffs as class representatives.[1] (Doc. 60.)  No opposition to the motion was filed, and no objection by a Class Member was submitted.  The matter was heard on May 23, 2012.  Mr. Matthew Theriault, Esq., of Initiative Legal Group APC and Mr. Michael Coats, Esq., of the Law Offices of Mark Yablonovich appeared telephonically on behalf of Plaintiffs as Class Counsel, and Ms. Leslie Abbott, Esq., of Paul Hastings LLP appeared on behalf of Defendants Aetna Life Insurance Company ("ALIC") and Aetna Inc. ("Aetna") (collectively, "Defendants").  No Class Member appeared at the hearing.  For the reasons set forth below, the Court GRANTS FINAL APPROVAL of the parties' class action settlement, (2) GRANTS an award of attorneys' fees and costs, and (3) GRANTS enhancement awards to Plaintiffs as class representatives.[2]

## II.   FACTUAL BACKGROUND

**A.** ***Gong-Chun v. Aetna Life Insurance Co., et al.*, No. 1:09-cv–01995-AWI-SKO ("*Gong-Chun*")**

On September 17, 2009, Plaintiff Michael Gong-Chun filed a putative class action complaint against ALIC and Aetna claiming substantive Labor Code violations for (1) unpaid meal breaks under Labor Code sections 226.7 and 512(a); (2) wages not paid upon termination under Labor Code sections 201 and 202; (3) wages not timely paid during employment under Labor Code section 204; and (4) violation of the California Business & Professions Code § 17200, et seq.  ALIC and Aetna removed *Gong Chun,* No. 1:09-cv-01995-AWI-SKO, to this Court on November 12, 2009.  The *Gong-Chun* putative class action does not state a claim for civil penalties California Labor Code Private Attorneys General Act of 2004 .

On April 2, 2010, ALIC and Aetna filed a motion to stay all further proceedings pending the outcome of the California Supreme Court's review of *Brinker Restaurant Corp. v Sup. Ct.*, 80 Cal. Rptr. 3d 781 (2008), *petition for review granted,* 85 Cal. Rptr. 3d 688.  The motion to stay was granted on May 17, 2010.  (*See* 1:09-cv-01995-AWI-SKO, Doc. 23.)  Prior to a decision being issued

---

[1] A First Amended Complaint naming additional Plaintiffs was deemed filed on February 6, 2012.  (*See* Docs. 48, 50.)

[2] The parties have consented to the jurisdiction of the United States Magistrate Judge assigned to the case. (Docs. 66, 67.)

in *Brinker* and before the stay of the litigation was lifted, the parties filed a stipulation permitting Plaintiffs to file a First Amended Complaint; Plaintiffs filed a Notice of Settlement and requested that the Court preliminarily approve the settlement.  (Docs. 48, 49.)

**B.      *Thomas v. Aetna Health of California, et al.,* No. 1:10-cv-01906-AWI-SKO ("*Thomas*")**

On September 2, 2010, Plaintiff Dorrenda Thomas filed a complaint for violation of Labor Code §§ 2698 *et seq.* pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA") in Fresno County Superior Court against (1) Aetna Health of California, Inc. ("AHC"), (2) Aetna and (3) ALIC.  The action was filed by Dorrenda Thomas individually and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the PAGA.

According to the complaint, Plaintiff Thomas was a "Small Group Sales Support Broker Liaison/Renewal Consultant," a non-exempt (hourly) paid position at Defendants' Fresno County business location.  (Doc. 1-1 (Complaint), ¶ 19.)  Plaintiff Thomas complained that Defendants violated various California Labor Code provisions by failing to (1) pay overtime wages, (2) provide meal periods, (3) provide rest periods, (4) pay minimum wage, (5) timely pay wages upon termination, (6) timely pay wages during employment, and (6) provide complete and accurate wage statements.  (Doc. 1-1, ¶¶ 41-47.)

On October 12, 2010, Defendants filed a notice of removal, claiming diversity of citizenship pursuant to 28 U.S.C. § 1332(a) as the jurisdictional predicate.   On November 10, 2010, Plaintiff Thomas filed a motion for remand asserting that AHC's presence in the litigation destroyed diversity and that the amount in controversy did not exceed $75,000; thus, the Court lacked subject matter jurisdiction over Plaintiff Thomas' complaint.

The motion for remand was scheduled for hearing before Senior District Judge Oliver W. Wanger on January 31, 2011.  On that date, Judge Wanger determined that reassignment to Chief Judge Anthony W. Ishii and Magistrate Judge Sheila K. Oberto was appropriate because of the similarity of the *Thomas* action with the *Gong-Chun* class action that was currently assigned to Chief Judge Ishii. (Doc. 27.)  On February 7, 2011, the motion to remand was referred to Magistrate Judge

Oberto.  On February 16, 2011, Defendants filed a motion to consolidate the *Thomas* matter with the *Gong-Chun* action, asserting the following:

> After the *Gong-Chun* wage and hour class action was stayed by this Court on May 15, 2010, the *Gong-Chun* lawyers ([Initiative Legal Group]) filed the *Thomas* PAGA penalties action in state court on September 2, 2010.  Aetna thereafter removed *Thomas* (and notified the court of the related nature of the actions).  Both plaintiffs purported to represent Aetna non-exempt employees in California who allegedly were denied meal periods and other timely wages.  The *Gong-Chun* complaint seeks alleged unpaid wages, interest, related penalties, attorneys' fees and costs.  *See* Prayer for Relief.  The *Thomas* complaint seeks PAGA penalties based on alleged unpaid wages, attorneys' fees and costs.  *See* Prayer for Relief.  Plaintiff Thomas is a putative class member in *Gong-Chun*.
>
> Although counsel never objected to Aetna's removal of the *Gong-Chun* action to this Court, a motion to remand the related *Thomas* action was filed on November 10, 2010[,] and is scheduled for hearing concurrently with this consolidation motion on March 16, 2011.  This is simply counsel's attempt to circumvent the *Gong-Chun* stay.

(Doc. 30, 2:14-3:2.)

The Court determined that the motion to consolidate could be potentially mooted by the Court's decision as to the motion for remand.  Therefore, the Court vacated the March 16, 2011, hearing date with regard to Defendants' motion to consolidate and held it in abeyance until a final decision was issued with regard to Plaintiff Thomas' motion for remand.  (Doc. 34.)

On June 2, 2011, Magistrate Judge Oberto issued Findings and Recommendations that Plaintiff Thomas' motion for remand be denied.  (Doc. 37.)  Plaintiff Thomas filed objections to the Findings and Recommendations (Docs. 40, 41), Defendants AHC, ALIC, and Aetna filed responses to Plaintiff Thomas' objections (Docs. 42, 43), and Plaintiff Thomas filed a reply (Doc. 44).  Plaintiff Thomas also filed a "Notice of New Authority" for the district court's consideration (Doc. 45), and Defendants AHC, ALIC, and Aetna filed a reply to Plaintiff Thomas' Notice of New Authority. (Doc. 47).

On August 31, 2011, the district court adopted the June 2, 2011, Findings and Recommendations in full, denying Plaintiff Thomas' motion for remand.  (Doc. 48.)  On September 21, 2011, Plaintiff Thomas filed a request for certification of the order denying the motion to remand for interlocutory appeal.  (Doc. 49.)  While Plaintiff Thomas' motion for certification of the order for interlocutory appeal was pending before the district court, the parties filed a notice of settlement. (Doc. 53.)

**C.     Universal Settlement of *Gong-Chun*, 1:09-cv-01995-AWI-SKO, and *Thomas*, 1:10-cv-01906-AWI-SKO**

*Gong-Chun* and *Thomas* were, in essence, universally settled, although Dorrenda Thomas was not a signatory to the class-action settlement agreement in *Gong-Chun*. The aggrieved employees represented by Dorrenda Thomas in the *Thomas* matter were also putative Class Members in the *Gong-Chun* action. The PAGA penalties sought in *Thomas* were necessarily dependent upon proof of the violations of the Labor Code alleged in *Gong-Chun.* Had the cases not settled, they would have been suitable for consolidation.

In *Thomas*, the parties filed a stipulation of dismissal, and the *Thomas* action was dismissed and closed on November 29, 2011. (Case No. 1:10-cv-01906-AWI-SKO, Docs. 55, 56.) On January 31, 2012, a notice of settlement was filed in the *Gong-Chun* action, for which Plaintiffs are currently seeking final approval, an award of attorneys' fees and costs, and enhancement awards to the Class Representatives. The terms of the *Gong-Chun* settlement include the PAGA penalties at issue in *Thomas* and provide for attorneys' fees for work performed in the *Thomas* case.

### III.     THE PARTIES' SETTLEMENT

On January 31, 2011, Plaintiffs filed a Notice of Settlement and a request for preliminary approval of the class-action settlement, indicating that the parties had negotiated a resolution of their dispute. (Doc. 49.) The terms of the parties' Settlement Agreement are summarized below.

**A.     The Composition of the Settlement Class**

The Settlement Agreement provides for the certification, for settlement purposes only, of a class comprised of all non-exempt or hourly paid employees who worked for Defendants ALIC and Aetna anywhere in California at any time from September 17, 2005, through February 16, 2012. (Settlement Agreement, Doc. 60-7, ¶ 33.)

**B.     The Material Terms of the Settlement Agreement**

**1.     The Class Settlement Amount**

Plaintiffs and Defendants have agreed to settle the underlying class claims in exchange for a Class Settlement in the amount of $700,000.00. Certain Class Members participated in Aetna's Individual Settlement Payment Program, and such amounts paid to these Class Members are to be

deemed as satisfaction of the amounts owed by Defendants under the terms of the parties' Settlement Agreement. (Settlement Agreement, Doc. 60-7, ¶¶ 17, 36(a).)  When the Class Settlement Amount is reduced by the amounts that would have been received by the 35 Class Members who excluded themselves and the 31 Class Members with undeliverable addresses, a total of $697,330.74 will have been paid to Class Members.  The remaining amount will be paid to the *Cy Pres* beneficiary, Futures Without Violence, a non-profit organization dedicated to preventing violence against women and children. (Settlement Agreement, Doc. 60-7, ¶ 36(e).)

### 2.   The Labor Workforce and Development Agency Payment

In satisfaction of the claims arising under the PAGA, the parties have agreed that Defendants will pay $15,000 to the California Labor and Workforce Development Agency, of which $1,000 has already been paid by Aetna in connection with the dismissal of the *Thomas* action. (Settlement Agreement, Doc. 60-7, ¶ 36(d).)

### 3.   Claims Administration Costs

The parties have agreed that the Claims Administrator will be paid $25,000 for the costs associated with the administration of this Settlement. (Settlement Agreement, Doc. 60-7, ¶ 36(e).)

### 4.   Class Counsel Award of Attorneys' Fees and Costs [3]

Defendant has also agreed to pay up to $468,500 toward Class Counsel's attorneys' fees and costs. (Settlement Agreement, Doc. 60-7, ¶ 36(b).)

### 5.   Class Representative Enhancement Awards

The parties have agreed that the Class Representatives will be paid a total of $17,500 for prosecuting this case on behalf of the Class which shall be distributed as follows: (1) $7,500 to Plaintiff Michael Gong-Chun, (2) $2,000 each to Plaintiffs Sotil-Gaillour, Bucaria, Brager, Lemons, and Cruz. (Settlement Agreement, Doc. 60-7, ¶ 36(c).)

### C.   The Scope of the Release in the Settlement Agreement

The parties' Settlement Agreement sets forth the following release by the Class Members:

---

[3] On February 16, 2012, the Court appointed Initiative Legal Group APC and the Law Offices of Mark Yablonovich "Class Counsel," and appointed the named Plaintiffs as Class Representatives.  (Doc. 57.)

29. "Released Claims" means all claims, rights, demands, liabilities and causes of action, whether known or unknown, arising from, or related to, the same set of facts as those set forth in the operative complaints in the Action during the Class Period, including claims based on the following categories of allegations: All claims for unpaid meal period premiums, including claims pursuant to California Labor Code section 226.7 and 512(a); all claims for unpaid rest period premiums, including claims pursuant to California Labor Code section 226.7; all claims for the failure to timely pay wages upon termination, including claims pursuant to California Labor Code sections 201, 202, and 203; all claims for failure to timely pay wages, including claims pursuant to California Labor Code section 204; all claims for failure to pay minimum wages, including claims pursuant to California Labor Code sections 1194, 1197 and 1197.1; all claims for failure to provide complete and accurate wage statements, including claims pursuant to California Labor Code section 226; incorporated or related claims asserted through California Business and Professions Code sections 17200, et seq.; and incorporated or related claims for PAGA penalties, including claims pursuant to California Labor Code sections 2899 et seq.

60. <u>Release of Claims by Class Members</u>. Upon the Effective Date, Plaintiffs and all Participating Class Members shall waive and forfeit all Released Claims against all Released Parties.

(Settlement Agreement, Doc. 60-7, ¶¶ 29, 60.)

The parties' Settlement Agreement also sets out a broader release for the Class Representatives:

61. <u>Release of Additional Claims & Rights by Plaintiffs</u>. Upon the Effective Date, specifically conditioned on receiving any portion of their respective Class Representative Enhancement, each of the Plaintiffs shall hereby agree to the additional following General Release:

> Plaintiff hereby releases, acquits, and forever discharges Defendant, its parents, subsidiaries and affiliates, and each of them, and their respective agents, general agents, insurers, reinsurers, payroll companies, attorneys, representatives, owners, stockholders, policyholders, principals, partners, employees, officers, directors, trustees, heirs, successors, predecessors, assigns, parent corporations, subsidiaries, affiliated companies, and each and all of them, of and from any and all obligations, debts, claims, liabilities, demands, and causes of action of every kind, nature and description whatsoever, whether or not now known, suspected or claimed, which they ever had, now have, or may hereafter acquire by reason of employment with Defendants, accruing from the beginning of time until the date that the final approval of the Settlement is granted, including all claims, known or unknown. To the extent that the foregoing releases of the Plaintiffs are releases to which Section 1542 of the California Civil Code or similar provisions of other applicable law may apply, the foregoing releases shall be effective as a bar to any and all claims of any character, nature or kind, known or unknown, suspected or unsuspected specified herein. Plaintiff expressly waives any and all rights and benefits conferred upon her by the provisions of Section 1542 of the California Civil Code or similar provisions of applicable law.

Plaintiffs agree that they are each familiar with the provisions of the California Civil Code section 1542 which provides as follows;

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

**D.    Notice to the Class Members**

The procedures for giving notice to the Class Members, as set forth in the parties' Settlement Agreement (*see* Doc. 60-7, ¶ 18) and as ordered in the Court's Preliminary Approval Order (Doc. 57), have been carried out by the Settlement Administrator, Rust Consulting, Inc. ("Rust") (Roe Decl., Doc. 60-8, ¶ 2.)  On February 28, 2012, Rust received the Class Notice, which was approved by the Parties prior to mailing.  (Roe Decl., Doc. 60-8, ¶ 6; Doc. 57.)  The Class Notice summarized the Settlement Agreement's principal terms, provided Class Members with an estimate of how much they would be paid if the Settlement Agreement received final approval, and advised Class Members how to submit claims for payment, opt out of the Settlement, or object to the Settlement.  (*See* Williams Decl., Doc. 49-1, Exh. A.)  The Class Notice was approved by the Court in its February 16, 2012, Preliminary Approval Order.  (Doc. 57.)

On February 28, 2012, counsel for Defendant provided Rust with a list ("Class List") of all Class Members' names, their last known mailing addresses and telephone numbers, Social Security Numbers, and other information necessary to calculate estimated settlement payments.  (Roe Decl., Doc. 60-8, ¶ 7.)  The Class List contained data for 2,051 potential Class Members.  (Roe Decl., Doc. 60-8, ¶ 7.)

On March 7, 2012, Notices were mailed to 2,051 Class Members contained in the Class List via First Class mail.  (Roe Decl., Doc. 60-8, ¶ 9.)  The Notice advised Class Members that they could submit a Request for Exclusion or Dispute post-marked by April 6, 2012.  (Roe Decl., Doc. 60-8, ¶ 9.)  As of April 24, 2012, Rust received 119 undeliverable Notices.  (Roe Decl., Doc. 60-8, ¶ 10.)  Of the undeliverable Notices, seven (7) were returned to Rust after the filing deadline and were therefore not traced.  (Roe Decl., Doc. 60-8, ¶ 10.)  Rust performed address traces on 104 undeliverable Notices.  (Roe Decl., Doc. 60-8, ¶ 10.)  Of the 104 traces performed, 16 updated addresses could not be obtained and the notices remained undeliverable.  (Roe Decl., Doc. 60-8, ¶

10.)  In total, of the 119 undeliverable Notices received by Rust, 31 were truly undeliverable.  (Roe Decl., Doc. 60-8, ¶ 10.)

In total, Rust received 35 Requests for Exclusion from Class Members.  (Roe Decl., Doc. 60-8, ¶ 12.) Of the Requests for Exclusion, 33 were considered valid and timely, one (1) was untimely and one (1) Request for Exclusion asked to be excluded, but also requested receipt of the Individual Settlement Payment.  (Roe Decl., Doc. 60-8, ¶ 12.)  This Request for Exclusion was therefore deemed by the parties as deficient.  (Roe Decl., Doc. 60-8, ¶ 12.)  A "cure letter" was sent to this Class Member asking that person to clarify whether he or she intended to participate in the Settlement or wished to be excluded.  (Roe Decl., Doc. 60-8, ¶ 12.)  As of April 24, 2012, this Class Member has not submitted a response to the "cure letter."  (Roe Decl., Doc. 60-8, ¶ 12.)  This Class Member's Request for Exclusion will therefore be disregarded, and the individual will be mailed his or her Individual Settlement Payment.  (Roe Decl., Doc. 60-8, ¶ 12.)  Rust has received no "Disputes for the Settlement" or objections to the Settlement.  (Roe Decl., Doc. 60-8, ¶¶ 13, 14.)  At the May 23, 2012, hearing on this motion, counsel for both parties stated that the information provided by Rust was current and had not changed.

## IV.  DISCUSSION

**A.    Final Approval of the Class-Action Settlement is Granted**

**1.    The Rule 23(a) Class-Certification Requirements Are Satisfied**

Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements. "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  In confirming the propriety of class certification, courts assess the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)).

### a.     Numerosity

Numerosity requires that the class be so numerous that the joinder of individual class members would be impracticable.  Fed. R. Civ. P. 23(a)(1).  Across the Settlement Class, 2,051 California Class Members were ultimately identified.  The number of Class Members in this case indicates that the numerosity factor has been satisfied.  *See, e.g., Jordan v. L.A. Cnty.*, 669 F.2d 1311, 1319 (9th Cir. 1982) (indicating that class sizes of 39, 64, and 74 are sufficient to satisfy the numerosity requirement), *vacated on other grounds*, 459 U.S. 810 (1982).

### b.     Commonality

Rule 23(a) also requires there be "questions of law or fact common to the class." Commonality exists when there is either a common legal issue stemming from divergent factual predicates or a common nucleus of facts resulting in divergent legal theories.  *Hanlon v. Chrysler Corp.* ("*Chrysler Corp.*"), 150 F.3d 1011, 1019 (9th Cir. 1998).  In other words, commonality is generally satisfied where, as in this case, "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005).  As clarified in *Wal-Mart Stores, Inc. v. Dukes*, a plaintiff must demonstrate that the class members "have suffered the same injury" and that their claims "depend upon a common contention . . . of such a nature that is capable of classwide resolution– which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (internal citation omitted).

The Class Members' claims arising from Defendants' alleged uniform employment policies here are different from those found insufficient to establish commonality in *Dukes*,131 S. Ct. at 2554.  In *Dukes*, the purported commonality was a lack of common control over a business practice.  *Id*. at 2554-55.  The Supreme Court determined that the "only corporate policy that the plaintiffs evidence convincingly establishes is Wal-Mart's 'policy' of *allowing discretion* by local supervisors over employment matters."  *Id*.  The Court noted that, "[o]n its face, of course that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy *against having* uniform employment practices."  The Court concluded that there

was no specific employment practice that tied all of the putative class members together and that "[m]erely showing that Wal-Mart's policy of discretion has produced an overall sex-based disparity does not suffice." *Id.* at 2556. Here, there is no evidence before the Court that the pay practices alleged to violate the California Labor Code were applied inconsistently, such that the complained-of employment practices do not "touch and concern all members of the class." *Id.* at 2557 n. 10 (internal citations omitted).

The parties have agreed for purposes of settlement only that the following questions of law and fact are common to the class:

(1)     Whether Defendants' failure to pay wages, without abatement or reduction, in accordance with the California Labor Code, was willful;

(2)     Whether Defendants deprived Plaintiffs and Class Members of meal periods or required Plaintiffs and Class members to work during meal periods without compensation;

(3)     Whether Defendants failed to pay all wages earned by Plaintiffs and Class Members;

(4)     Whether Defendants failed to timely pay all wages due to Plaintiffs and Class Members upon their discharge or resignation;

(5)     Whether Defendants' conduct was willful or reckless;

(6)     Whether Defendants engaged in unfair business practices in violation of California Business & Professions Code section 17200, et seq.; and

(7)     The appropriate amount of damages, restitution, or monetary penalties resulting from Defendants' violation of California Law.

These common questions of law or fact are sufficient to satisfy the commonality requirement.

### c.     Typicality

Typicality exists when "the claims or defenses of the representative are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality . . . is said . . . to be satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868. Under the rule's "permissive standards," representative claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Chrysler Corp.*, 150 F.3d at 1020. Plaintiffs' claims are "co-extensive" with the other Class Members, as Plaintiffs

and the absent Class Members were all Defendants' employees who were paid under the same pay practices and worked under the same company-wide employment policies. The typicality requirement is satisfied.

### d. Adequacy of Representation

The final Rule 23(a) prerequisite, adequacy of representation, is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The satisfaction of constitutional due process concerns requires that absent class members be afforded adequate representation prior to an entry of judgment, which binds them. *Chrysler Corp.*, 150 F.3d at 1020. Determining the adequacy of representation requires consideration of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

The adequacy-of-representation requirement is met here because Plaintiffs have the same interests as the absent Class Members, e.g., obtaining payment for wages unlawfully withheld. Further, there is no apparent conflict of interest between the named Plaintiffs' claims and those of the other Class Members, particularly because the named Plaintiffs have no separate and individual claims apart from the Class.

Moreover, there are no allocation dilemmas among the Settlement Class as the Ninth Circuit observed were issues in *Amchen Products, Inc. v. Windsor* ("*Amchen*"), 521 U.S. 591 (1997). In *Amchen*, the settlement agreement eliminated all present and future claims against asbestos manufacturers, and the class counsel was attempting to represent both groups of plaintiffs, i.e., those who had present claims and those who had future claims. The conflict between the two groups of plaintiffs was that "the present plaintiffs had a clear interest in a settlement that maximized current funds, while future plaintiffs had a strong interest in preserving funds for their future needs and protecting the total fund against inflation." *Chrysler Corp.*, 150 F.3d at 1020-21 (discussing *Amchen*, 521 U.S. 591 (1997)). This case does not involve sub-classes or classes with diverging interests with respect to allocation of the settlement funds in the same manner as *Amchen*. The Court

does not perceive any conflicts of interest between Plaintiffs and Class Counsel and other Class Members.

In considering the adequacy requirement, the Court also evaluates whether Plaintiffs and Class Counsel will pursue the Class claims with vigor.  The Ninth Circuit has held that, "[a]lthough there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Chrysler Corp.*, 150 F.3d at 1021.  There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have successfully certified 17 class actions through contested motions.  (Supp. Memorandum., Doc. 64, 3:21-4:12.)   Further, this is not a case in which the Class Members will receive no monetary distribution, while Class Counsel will be amply rewarded. *Chrysler Corp.*, 150 F.3d at 1021.

The apparent rationale to settle this case was supported, in part, by the pendency of *Brinker Restaurant Corp. v. Superior Court*, 165 Cal. App. 4th 25 (2008), *aff'd in part,* 53 Cal. 4th 1004 (2012) before the California Supreme Court at the time the matter was settled.  California law, as it related to certain of the Class claims, was in potential flux, and settlement, rather than continued litigation, was potentially more beneficial to the Class Members.   In other words, it appears that the settlement was reached for strategic reasons that benefitted the Class, rather than Class Counsel's inability or unwillingness to pursue further litigation. *See Chrysler Corp.,* 150 F.3d at 1021 (class counsel inadequate by definition where counsel demonstrates an inability or unwillingness to try the case).  In sum, the Court finds that the adequacy factor is satisfied.

### e.    Conclusion

As initially determined in the Court's preliminary approval order and as set forth above, the Rule 23(a) requirements for class certification have been satisfied.

### 2.    The Rule 23(b)(3) Requirements are Satisfied

In addition to meeting the requirements of Rule 23(a), to be certified a class must also meet at least one of the requirements of Rule 23(b).  Plaintiffs assert that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy and the

requirements of Rule 23(b) are met.  (Doc. 49, 30:9-17.)  Pursuant to Rule 23(b)(3), a class action

may be maintained if:

> (3)      the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
>      (A)      the class members' interests in individually controlling the prosecution or defense of separate actions;
>
>      (B)      the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
>      (C)      the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
>      (D)      the likely difficulties in managing a class action.

Certification under Rule 23(b)(3) is appropriate whenever the interests of the parties can be served

best by settling their differences in a single action. Courts refer to the requirements of Rule 23(b)(3)

as its "predominance" and "superiority" requirements.  *Amchen*, 521 U.S. at 615.

### a.     Predominance

As the Rule 23(a)(3) analysis already considers the issue of commonality, the focus of the

Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues.

*Hanlon*, 150 F. 3d at 1022.  In other words, "[t]he Rule 23(b)(3) predominance inquiry tests whether

proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchen*,

521 U.S. at 623. The "main concern in the predominance inquiry . . . [is] the balance between

individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953,

959 (9th Cir. 2009).

The parties' Settlement Agreement sufficiently demonstrates that "[a] common nucleus of

facts and potential legal remedies dominates this litigation." *Chrylser Corp.*, 150 F.3d at 1022.  If

individual Class Members were to sue individually, members of the same proposed settlement class

would bring essentially the same claims against Defendants.   The central issues raised by the

complaint concern policies and practices of Defendants which applied broadly to all the employees

in the proposed settlement class.  Similar to *Wright v. Linkus Enterp., Inc.*, 259 F.R.D. 468 (E.D.

Cal. 2009), this case derives from alleged policies that required Class Members to work, for

1   example, without compensation for meal and rest periods.  The alleged company-wide and uniform

2   employment policies comprise a common nucleus of facts for employees in the settlement class.

3   *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) (class certification is usually

4   appropriate where "liability turns on an employer's uniform policy that is uniformly implemented,

5   since in that situation predominance is easily established"); *see also Perez v. Safety-Kleen Sys., Inc.*,

6   253 F.R.D. 508, 520 (N.D. Cal. 2008) (common issues predominate meal break claims and claims

7   for failure to provide itemized wage statements because these were class-wide policies, and litigation

8   of these claims involve class-wide proof rather than individualized inquiry).  Moreover, the alleged

9   violations of state law entitle the Class Members to the same legal remedies.  Thus, although there

10  are minor factual differences among Class Members, such as the number of hours or weeks worked,

11  common issues predominate.

12              **b.      Superiority**

13          In addition to the predominance requirement, Rule 23(b)(3) provides a non-exhaustive list

14  of matters relevant to the Court's determination that class action treatment is superior to other

15  methods of adjudication.  Rule 23(b)(3)(A)-(D).  The first factor considers the interest of each

16  member in "individually controlling the prosecution or defense of separate actions."  Rule

17  23(b)(3)(A).  This factor weighs against class certification where each class member has suffered

18  sizeable damages or has an emotional stake in the litigation.  *See, e.g., In re N. Dist. of Cal., Dalkon*

19  *Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 856 (9th Cir. 1982), *abrogated on other grounds in*

20  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996).  In this case, where monetary

21  damages that each Class Member suffered individually are relatively modest, certifying a class action

22  is favored.  *Id.*

23          The second factor to consider is "the extent and nature of any litigation concerning the

24  controversy already begun by or against members of the class."  Fed. R. Civ. P. 23(b)(3)(B).  The

25  only known litigation concerning the controversy is the case at issue in this settlement, and thus this

26  factor favors certification.  The *Thomas* action was a related action on behalf of aggrieved employees

27  of Defendants and who were also members of the putative class in *Gong-Chun*; however, *Thomas*

28  has been settled.  The existence of the *Thomas* action does not weigh against certifying the class.

The third Rule 23(b)(3) factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum" (Fed. R. Civ. P. 23(b)(3)(C)), and the fourth factor is "the likely difficulties in managing a class action" (Fed. R. Civ. P. 23(b)(3)(D)).  The fourth factor "encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 164 (1974).  In the context of settlement, however, the third and fourth factors are rendered moot and are not relevant.  *See Amchem*, 521 U.S. at 620 (where a district court is confronted with a settlement-only class certification, the court need not inquire whether the case, if tried, would present manageability problems because the point is that there will be no trial).

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be the superior method for managing litigation if no realistic alternative exists." *Valentino*, 97 F.3d at 1234.  The potential recovery by any individual plaintiff is relatively small and thus individual members of the class would likely be unwilling or unable to institute separate suits, and the filing of individual suits by 2,051 separate plaintiffs would create an unnecessary burden on judicial resources.  In sum, the Rule 23(b)(3) predominance and superiority requirements are satisfied.

### c.    Conclusion

For the reasons set forth above, the Settlement Class meets the class-certification requirements of Rules 23(a) and 23(b)(3).

### 3.    The Proposed Settlement is Fair, Reasonable, and Adequate

Settlements are afforded a presumption of fairness if (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.  4 William B. Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. West 2011).  Here, the parties' Settlement Agreement was reached through the efforts of counsel with the assistance of a mediator with experience handling wage-and-hour class-action disputes.  While the action was not settled during the course of the mediation, according to Plaintiffs, the mediation "resulted in the narrowing of issues related to class[-]wide liability and damages." (Doc. 60, 12:16-17.)  Thus, the

settlement was the result of arms-length negotiation.  As discussed below, sufficient discovery has been completed, and Class Counsel and Defendants' counsel are experienced in employment litigation as well as class-action lawsuits.  Additionally, no Class Member objected to the Settlement. Therefore, the settlement is entitled to a presumption of fairness.

A settlement may be approved only after a hearing and on finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C).  Such approval is required to ensure that any settlement reached is consistent with the plaintiff's fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985).  The court also serves as guardian for the absent class members who will be bound by the settlement, and therefore must independently determine the fairness of any settlement. *Id.*  However, the court's role in intruding upon what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate for all concerned. *FDIC v. Alshuler (In re Imperial Corp. of Am.)*, 92 F.3d 1503, 1506 n.5 (9th Cir. 1996).  Therefore, the settlement hearing is not meant to be conducted as a trial or rehearsal for trial on the merits. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

In determining whether a proposed settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e), courts may consider factors including (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the settlement amount; (5) the extent of discovery completed and the stage of the proceedings; (6) whether the class has been fairly and adequately represented during the settlement negotiations; and (7) the reaction of the class to the proposed settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Chrysler Corp.*, 150 F.3d at 1026).

### a.     The Strength of Plaintiffs' Case

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits and the range of possible recovery. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009).  In determining the probability of the plaintiff's success on the merits, there is no "particular

formula by which that outcome must be tested." *Id.* at 965.  Instead, the court's assessment is based on "nothing more than an 'amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974)).  The court is not required to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of the outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.*  Rather, the court may presume that, through negotiation, the parties, their counsel, and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *See Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ").

Plaintiffs acknowledge that "the value of Plaintiffs' meal and rest period claims had to be discounted because the requirements of their provision under the California Labor Code was uncertain at the time of mediation" due to the pendency of *Brinker Rest. Corp. v. Super. Ct.*, 165 Cal. App. 4th 25, 31 (2008) before the California Supreme Court.  (Doc. 60, 18:19-25.)  In *Brinker*, the Supreme Court considered whether California law requires that an employer ensure meal breaks are taken or whether an employer need only provide a meal break.  This unsettled area of California law potentially diminished Plaintiffs' possible recovery with respect to the meal break claims.[5]

Plaintiffs' rest-break claims also "posed considerable risk."  (Doc. 60, 19:1.)  Plaintiffs recognized that employers were not required to maintain records of rest breaks, and Defendant did not maintain records in this case.  Although Class Counsel maintains that it was able to ascertain a potential value of the claims through numerous Class Member interviews, the rest-break claims "had to be dramatically discounted based on the lack of a facially violative policy or records that would be probative of the underlying value."  (Doc. 60, 19:6-7.)

As it related to waiting-time penalties, Plaintiffs also acknowledged that, because the Labor Code arguably required a willful failure to pay wages, and in light of the difficulties associated with

---

[5] On April 12, 2012, the California Supreme Court issued its decision in *Brinker*, affirming in part and holding that employers need only provide a meal break, not ensure that it is taken by the employee. *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012).

1   establishing a common policy or practice of paying wages after they were due, the value of this claim

2   had to be discounted.  (Doc. 60, 19:8-12.)

3       Therefore, although Plaintiffs maintained their strong belief in the underlying merits of the

4   case, Plaintiffs' counsel acknowledged the weaknesses in both the meal and rest-break claims and

5   the waiting-time penalties, and considered the uncertainties surrounding proving the claims in a

6   lengthy and complex jury trial in negotiating the settlement amount.   As a result, Plaintiffs'

7   likelihood of success appears to have been properly accounted for in the settlement amount.  This

8   factor weighs in favor of approval.

9           **b.    The Risk, Expense, Complexity, and Likely Duration of Further**
              **Litigation**
10

11      The risk, expense, complexity, and likely duration of further litigation are factors that

12   consider "the probable costs, in both time and money, of continued litigation."  *In re Warfarin*

13   *Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D.Del. 2002).   Generally, "unless the settlement is

14   clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

15   with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D.

16   Cal. 2004) (quoting 4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed.

17   2002)).   Moreover, settlement is encouraged in class actions where possible.   *See Van Bronkhorst*

18   *v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there

19   is an overriding public interest in settling and quieting litigation. This is particularly true in class

20   action suits which are now an ever increasing burden to so many federal courts and which present

21   serious problems of management and expense.").

22      In this case, there remained significant procedural hurdles for the putative class to confront,

23   including certification of the class.  Avoiding such unnecessary expenditures of resources and time

24   benefits all the parties and the Court.  Moreover, there were significant risks in continued litigation

25   and no guarantee of recovery given the current state of the law due to the pendency of *Brinker*,

26   particularly as it related to the meal break claims.   The settlement, therefore, provides Class

27   Members with another significant benefit that they would not receive if the case proceeded – certain

28   and prompt relief.  *See Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) ("It

1  has been held proper to take the bird in hand instead of a prospective flock in the bush."). This factor

2  weighs in favor of approval.

3          **c.**      **The Risk of Maintaining Class Action Status Throughout the Trial**

4        A settlement in this case was reached prior to the Supreme Court's recent decision in *Brinker*

5  *Restaurant Corp. v. Superior Court.*  Given the recent decision by the California Supreme Court in

6  that case, class certification for Plaintiffs' claim regarding missed meal breaks would be more

7  difficult.  *See Brinker Rest. Corp.*, 53 Cal. 4th at 1040 (holding employer is required to provide a

8  meal period to employees, but "is not obligated to police meal breaks and ensure no work thereafter

9  is performed").  On the other hand, the fact that one claim may not be amenable to class treatment

10  or otherwise lacks viability does not necessarily affect the propriety of class certification with respect

11  to other claims of the class or necessarily impact the ability to maintain class-action status

12  throughout trial.  *See generally Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 612 (S.D. Cal.

13  2010) (granting class certification and finding that "[t]he overtime, wage statement, and waiting time

14  claims are suitable for class-wide treatment, but the meal and rest break and reimbursement claims

15  aren't.").  Because the Court is not aware of any risks to maintaining class-action status throughout

16  trial, this factor is neutral.

17          **d.**      **The Settlement Amount**

18        "[S]ettlement is about compromise, a yielding of the highest hopes in exchange for certainty

19  and resolution."  *In re Warfarin*, 212 F.R.D. at 257-58.   The Class Settlement Amount equals

20  $700,000. Ultimately, $697,330.74 will be distributed to Class Members and $2,669.26 will be

21  distributed to the *Cy Pres* beneficiary.  (Roe Decl., Doc. 60-8, ¶ 15.)  Although a larger award was

22  theoretically possible, "the very essence of a settlement is compromise, a yielding of absolutes and

23  an abandoning of highest hopes."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.

24  1998) (internal citations and quotation marks omitted).  In light of the claims at issue in this case and

25  the size of the proposed settlement class, the Settlement Amount appears fair and reasonable and this

26  factor weighs in favor of final approval.

27

28

**e.** **The Extent of Discovery Completed and the Stage of the Proceedings**

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV*, *Inc.*, 221 F.R.D. at 528.  What is required is that "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently."  4 William B. Rubenstein, Alba Conte, & Herbert B. Newbert, *Newberg on Class Actions* § 11.41 (4th ed. West 2011).  Here, Plaintiffs' counsel expended significant time and resources conducting formal discovery including propounding interrogatories and 71 document requests. (Williams Decl., Doc. 60-7, ¶ 4.)  In response to these discovery requests, Defendants produced, among other things, 300 pages of responsive documents as well as the names and contact information of prospective Class Members. (Williams Decl., Doc. 60-7, ¶ 4.)  Class Counsel interviewed 51 prospective Class Members and, during the course of mediation, Defendant informally produced class-wide data that enabled Class Counsel to realistically estimate Defendants' exposure. (Williams Decl., Doc. 60-7, ¶ 5.)

Overall, Class Counsel indicates that it has performed "intensive investigation" into the claims at issue, which included (1) determining the suitability of the putative class representatives through interviews, a background investigation, and an analysis of employment files and related records; (2) propounding interrogatories and requests for production of documents; (3) interviewing putative Class Members to acquire information about potential claims, identify additional witnesses, and obtain documents; (4) obtaining and analyzing Defendants' wage-and-hour policies and procedures obtained from Class Members; (5) researching the latest case-law developments regarding the theories of liability; (6) researching settlements in similar cases; (7) conducting discounted valuation analyses of claims; (8) drafting the mediation brief; (9) negotiating the terms of this settlement in private mediation; (10) finalizing the parties' Settlement Agreement; and (11) drafting the preliminary and final approval papers. (Williams Decl., Doc. 60-7, ¶ 6.)  The Court finds that sufficient discovery has been conducted, and this factor weighs in favor of approval.

**f.      Whether the Class has been Fairly and Adequately Represented During the Settlement Negotiations**

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.  *See DIRECTV*, *Inc.,* 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotation marks and citations omitted).  This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, the experience and view of Class Counsel weigh in favor of approving the Settlement. Class Counsel understood the complex risks and benefits of any settlement and concluded that the proposed Settlement was a just, fair, and certain result. (Williams Decl., Doc. 60-7,¶ 7.)  Moreover, Class Counsel is experienced in this area of law and the settlement was reached after mediation conducted by an experienced wage-and-hour mediator.  This factor weighs in favor of approval.

**g.      The Reaction of the Class to the Proposed Settlement**

Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. *DIRECTV, Inc.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *see also Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding that objections from only 16 percent of the class was persuasive that the settlement was adequate).

Here, less than two percent of Class Members opted out of the Settlement.   Further, no objection to the Settlement Agreement was received, and no Class Member appeared at the final approval hearing to state any objection.  The response of the class was positive, and this weighs in favor of finding that the settlement is favorable to the Class Members.

### 4.    The Proposed Payment to the Claims Administrator is Reasonable and Should be Approved

The $25,000 that Plaintiffs request be approved as payment to the Claims Administrator appears fair and reasonable.  The fee requested here is consistent with other Claims Administration fees in similar class-action settlements, particularly in light of the number of Notice Packets that the Claims Administrator was required to process.  *See, e.g., Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) (awarding $250,000 in administration costs where claims administrator sent out 68,487 notices).  The Court finds the requested Claims Administration fee is reasonable, and it shall be awarded.

### 5.    The Proposed PAGA Payment is Reasonable and Should be Approved

A settlement reached between the parties on a PAGA claim is subject to court review and approval.  Cal. Lab. Code § 2699(l).  Thus, while the PAGA civil penalties were at issue in *Thomas* and not *Gong-Chun* because the *Thomas* action was settled with the *Gong-Chun* matter, it is appropriate that the Court consider the settlement agreement with respect to the PAGA claims.  Pursuant to the Settlement Agreement, Defendants have agreed to pay $15,000 to the California Labor and Workforce Development Agency ("LWDA") as civil penalties pursuant to the California Labor Code Private Attorneys General Act of 2004, codified at California Labor Code §§ 2699, *et seq.*  This comports with PAGA settlement awards in other cases.  *See, e.g., Chu v. Wells Fargo Investments, LLC*, No. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at * 1 (N.D. Cal. Feb. 16, 2011) (approving PAGA settlement payment of $7,500 to the LWDA out of $6.9 million common-fund settlement).  Moreover, this payment will not be paid out of the total Settlement Amount.  The Court finds that the PAGA payment is set at a reasonable amount, and it shall be approved.

### 6.    Conclusion

In sum, as set forth above, the relevant factors weigh in favor of approving the parties' Settlement Agreement.  It represents a substantial recovery that avoids the risks associated with protracted litigation in a document-intensive wage-and-hour case.  The parties' Settlement Agreement is found to be fair and reasonable and is hereby APPROVED.

**B.     Plaintiffs' Motion for Attorneys' Fees is Granted**

The parties' Settlement Agreement provides that Defendants will pay attorneys' fees and costs "to Class Counsel in an amount approved by the Court up to $468,500." (Williams' Decl., Doc. 60-7, ¶36(b).)  On April 24, 2012, Plaintiffs filed a motion for an award of attorneys' fees and costs in the amounts of $443,424.72 and $25,075.28, respectively.  (Doc. 60, 20-34.)

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  In diversity actions, such as this, federal courts apply state law to determine the right to fees and the method for calculating fees.  *See Mangold v. Cal. Public Util. Comm'n*, 67 F.3d 1470, 1478 (1995); *see also Hartless v. Clorox Co.*, 273 F.R.D. 630, 642 (S.D. Cal. 2011).

**1.     Plaintiffs are Entitled to Attorneys' Fees as a Prevailing Party**

Plaintiffs claim entitlement to attorneys' fees pursuant to California Labor Code sections 218.5, 226(e), 1194(a), and 2699(g)(1) "because they have successfully litigated and settled claims arising out of Aetna's alleged violation of the California Labor Code." (Doc. 60, 21:27-22:1.) Plaintiffs also claim entitlement to statutory attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 as the "successful party" in this action which resulted in the enforcement of an important right affecting the public interest.  (Doc. 60, 22:2-12.)

The California Labor Code provides the following fee-shifting provisions, which are relevant to this case:

> In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action . . . .

Cal. Lab. Code § 218.5.

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Cal. Lab. Code § 226(e).

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minium wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Cal. Lab. Code § 1194(a).

Except as provided in paragraph (2), an aggrieved employee may recover the civil penalty described in subdivision (f) in a civil action pursuant to the procedures specified in Section 2699.3 filed on behalf of himself or herself and other current or former employees against whom one or more of the alleged violations was committed. Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs. Nothing in this part shall operate to limit an employee's right to pursue or recover other remedies available under state or federal law, either separately or concurrently with an action taken under this part.

Cal. Lab. Code § 2699(g)(1).

The California Civil Code also contains a fee-shifting statute:

Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the aware appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any . . . .

Cal. Civ. Proc. Code § 1021.5.

Plaintiffs claim that, beyond their entitlement to attorneys' fees under the California Labor Code, they are also entitled to their attorneys' fees the California Code of Civil Procedure Section 1021.5 because Plaintiffs obtained significant monetary relief and they are the prevailing party in the action as a result of the parties' Settlement Agreement. Specifically, Plaintiffs contend that Defendants instituted a program of compensating prospective Class Members in exchange for a release of claims that are, in part, the subject of this litigation. Although Plaintiffs acknowledge Defendants' action in this regard was voluntary, Plaintiffs maintain that Defendants would not have instituted this "individual settlement program" if "Class Counsel had not brought to light potential violations of the wage and hour laws." (Doc. 60, 23:6-10.) Plaintiffs also argue that Class Counsel sought effective relief for those individuals who chose not to participate in Defendants' individual settlement program. As a result, Plaintiffs contend that "the full value of Class Counsel's efforts can

be properly appreciated only by recognizing that [] Aetna's individual settlement program and the Settlement Agreement are outgrowths of years of active prosecution of the claims at issue by Class Counsel." (Doc. 60, 23:13-16.)

In considering who may be deemed a "successful party" for purposes of awarding attorneys' fees pursuant to Section 1021.5, the case law uniformly explains that "an attorney fee award [under Section 1021.5] may be justified even when plaintiff's legal action does not result in a favorable final judgment." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565 (2004). In *Graham*, the Supreme Court explained that, in determining whether a plaintiff is a successful party for purposes of Section 1021.5, "[t]he critical fact is the impact of the action, not the manner of its resolution." *Id.* at 566 (internal quotation marks and citation omitted). Thus, a trial court assessing prevailing-party status "must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under [S]ection 1021.5." *Id.* (internal quotation marks and citation omitted). The *Graham* court also noted that numerous federal court decisions have reached a similar result, concluding that attorneys' fees may be proper "whenever an action results in relief for the plaintiff, whether the relief is obtained through a 'voluntary change' in the defendants' conduct, through a settlement, or otherwise." *Id.* at 567 (citing *Sullivan v. Comm'r of Pa. Dep't of Labor, etc.*, 663 F.2d 443, 447-50 (3d Cir. 1981); *Robinson v. Kimbrough*, 652 F.2d 458, 465-66 (5th Cir. 1981); *Am. Constitutional Party v. Munro*, 650 F.2d 184, 187-88 (9th Cir. 1981)). In sum, a "plaintiff will be considered a successful party where an important right is vindicated by activating defendants to modify their behavior." *Graham*, 34 Cal. 4th at 567 (internal quotation marks and citations omitted).

There is no opposition to the attorneys' fee request and no suggestion that Plaintiffs are not the prevailing parties by virtue of the settlement reached with Defendants. As a result, Plaintiffs are entitled to attorneys' fees pursuant to, *inter alia*, Section 1021.5.

### 2. Requested Attorneys' Fees are Reasonable Under the Lodestar Method

Where entitlement to fees is predicated on a fee-shifting statute, the primary method for considering the reasonableness of attorneys' fees is the lodestar method. *Lealao v. Beneficial Cal.,*

1  *Inc.*, 82 Cal. App. 4th 19, 26 (2000) ("In so-called fee shifting cases, in which the responsibility to

2  pay attorney fees is statutorily or otherwise transferred from the prevailing plaintiff or class to the

3  defendant, the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar

4  method.").

5  "The lodestar is produced by multiplying the number of hours reasonably expended by

6  counsel by a reasonable hourly rate." *Id.*  Once the court has determined the lodestar, it may increase

7  or decrease that amount by applying a positive or negative "multiplier" to take into account a variety

8  of other factors, including the quality of the representation, the novelty and complexity of the issues,

9  the results obtained, and the contingent risk presented.  *Id.*

10            **a.**     **The Number of Hours Expended on the Litigation is Reasonable**

11  Class Counsel's lodestar calculation includes 1,403.53 hours (1,235.6 + 167.93) spent by

12  attorneys working on the *Gong-Chun* and *Thomas* matters.[6]  The number of hours expended on the

13  litigation is reasonable in light of law and motion practice, the amount of discovery conducted, the

14  number of Defendants' employees included in the Settlement Class, the mediation preparation

15  required, and continuing negotiations following mediation.

16  In *Alvarado v. Nederend*, No. 1:08-cv-01099-OWW-DLB, 2011 WL 1883188, at * 8 n.2

17  (E.D. Cal. May 17, 2011), counsel expended approximately 308 hours reaching a settlement in a

18  wage-and-hour class action involving issues related to meal and rest breaks with approximately 150

19  class members.  Class membership here is significantly larger than in *Alvarado* and arguably entailed

20  review of a larger amount of discovery.  Similarly, in *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-

21  cv-01662-OWW-MSJ, 2011 WL 2648879, at *11-13 (E.D. Cal. Jun. 30, 2011), although the court

22  reduced the number of hours in performing the lodestar cross-check, the court concluded that 1,350

23  hours of attorney time was reasonably spent on a "garden variety wage-and-hour class action" with

24  approximately 553 class members.   The number of attorney work hours expended on this case

25

26        [6] It is noted that the number of hours worked by Class Counsel includes the hours spent litigating the *Thomas* action – the settlement of which has been included in the settlement to the *Gong-Chun* class, i.e.,  the PAGA payment.

27  As previously noted, the aggrieved employees in the *Thomas* action are members of the putative class in *Gong-Chun*. It is also noted that the parties' Settlement does not provide for attorneys' fees to be paid out of the $700,000 Settlement

28  Amount to the Class Members.

(1,403.53) is within the range of what has been deemed reasonable in this district for similar wage-and-hour class actions.  The Court finds no reason to reduce the number of hours set forth in counsel's lodestar calculations.

### b.    Some of the Requested Hourly Rates Should be Reduced

Here, Class Counsel's asserted lodestar totals $524,156[7] for Initiative Legal Group and $78,989 for the Law Offices of Mark Yablonovich.  By declaration, Class Counsel indicates the following rates, hours, and fees of each attorney who performed work on the litigation:

| Schedule of Fees for Initiative Legal Group | | | | |
|---|---|---|---|---|
| **Attorney** | **Title** | **Hourly Rate** | **Hours Worked** | **Total Fees Requested** |
| Arthur Meneses (December 1982) | Partner | $695 | 13.1 | $9,105 |
| Miriam Schimmel (December 1996) | Senior Counsel | $655 | 14.3 | $9,367 |
| Matthew Theriault (September 2006) | Partner | $610 | 83.7 | $51,057 |
| Glenn Danas (June 2010) | Senior Counsel | $590 | 64.9 | $38,291 |
| Justin Levine (February 2000) | Senior Counsel | $590 | 24.8 | $14,632 |
| Payam Shahian (December 2003) | Senior Counsel | $520 | 39.5 | $20,540 |
| Orlando Arellano (December 2004) | Senior Counsel | $490 | 70.9 | $34,741 |
| Sang Park (December 2004) | Senior Counsel | $490 | 237.0 | $116,130 |
| Eduardo Santos (December 2007) | Associate | $420 | 13.0 | $5,460 |
| Joseph Liu (June 2008) | Associate | $395 | 23.1 | $9,125 |

---

[7] All total fees have been rounded to the nearest dollar; Initiative Legal Group's lodestar was calculated at $524,160, but by rounding to the nearest dollar for each attorneys' fee, the figure stands at $524,156. It also appears that Plaintiffs' calculation with regard to Valentina Mindirgasova's fees was incorrect.  (*See* Doc. 60-6, ¶ 7.)  In Mark Yablonovich's declaration, the lodestar calculation presented for the Law Offices of Mark Yablonovich totaled $78,988, but rounding the fee of each attorney results in a lodestar calculation of $78,989.

| | | | | |
|---|---|---|---|---|
| Robin Hall (July 2009) | Associate | $395 | 30.7 | $12,127 |
| Kevin Yang (December 2009) | Associate | $365 | 91.3 | $33,325 |
| Teddy O'Reilly (December 2009) | Associate | $365 | 30.5 | $11,133 |
| Alexandria Witte (December 2010) | Associate | $330 | 26.4 | $8,712 |
| Valentina Mindirgasova (December 2010) | Associate | $330 | 22.2 | $7,326 |
| Matthew Aguirre (June 2010) | Associate | $330 | 267.5 | $88,275 |
| Rashan Barnes (January 2011) | Associate | $300 | 34.4 | $10,320 |
| Brian Sperber (June 2011) | Former Associate | $300 | 148.3 | $44,490 |
| Total | | | 1,235.6 | $524,156 |

(Meneses Decl., Doc. 60-6, ¶ 7.)[8]

| Schedule of Fees for the Law Offices of Mark Yablonovich | | | | |
|---|---|---|---|---|
| **Attorney** | **Title** | **Hourly Rate** | **Hours Worked** | **Requested Fee** |
| Mark Yablonovich (December 1996) | Principle and Owner | $600 | 72 | $43,200 |
| Neda Roshanian | 8th-Year Associate | $475 | 17.7 | $8,408 |
| Michael Coats | 3rd-Year Associate | $350 | 78.23 | $27,381 |
| Total | | | 167.93 | 78989 |

(Yablonovich Dec., Doc. 60-3).

To determine a reasonable hourly rate, courts look to the rates for comparable legal services in the local community. *Nichols v. City of Taft*, 155 Cal. App. 4th 1233, 1242-43 (2007) ("The lodestar figure is calculated using the reasonable rate for comparable legal services in the *local*

---

[8] The date noted as to each attorney in the table above is the date that attorney was admitted to the State Bar of California, as set forth on the State Bar of California's website, http://www.calbar.ca.gov.

*community* for noncontingent litigation of the same type, multiplied by the reasonable number of hours spent on the case.").  In support of the requested hourly rates,[9] Class Counsel identified two recent state court decisions within the Fresno division of this district where Initiative Legal Group was awarded its 2011 requested hourly rates, which are similar to the rates requested here. (Doc. 64-1.)

Class Counsel cites *Johnston v. American Fidelity Assurance*, Case No. 09CECG03909, a case litigated by Class Counsel, where the Fresno County Superior Court approved $858,000 in attorneys' fees as part of a class-action settlement. (Doc. 64-1, Exhibit A.)  The court approved the hours billed and determined that the attorney rates billed to the litigation were reasonable. (Doc. 64-1, Exhibit A, p. 8, ¶ 13.)  Mr. Meneses states in his declaration that the rates approved were Initiative Legal Group's 2011 billing rates.  (Doc. 64-1, ¶ 3.)  In *Johnston*, because the court appears to have signed an order proposed by counsel, the order does not contain any detail about the hourly rates requested.  It is difficult to ascertain which attorneys worked on the case and their years of experience in relation to their billable rate; thus, the order has limited persuasive value.

Class Counsel also indicates that their billing rates were approved by the Stanislaus County Superior Court in *Gutierrez et al. v. Lowe's HIW, Inc.*, Case No. 657575.  That case, however, involved approval of a common fund settlement where the court ultimately awarded 33 and 1/3 percent of the maximum settlement amount, and it is not clear how the court evaluated the lodestar presented by Class Counsel.  (Doc. 64-1, Exhibit C, p. 37-44.)  However, several recent decisions issued by this court have expressly discussed prevailing hourly rates in the context of wage-and-hour class action cases.

In *Bond*, 2011 WL 2648879, at *11-13, a wage-and-hour class action, the court considered the reasonableness of the class counsel's requested attorneys' fees and noted that "[p]revailing hourly

---

[9] Counsel presented citations to numerous district court and state court cases in California where their rates have been approved, but cases outside this district are not persuasive to establish a reasonable rate in the local community in which this Court is located.  *See Bond*, 2011 WL 2648879, at * 12 n. 1 ("These hourly rates were apparently approved without a written decision in *Padilla et al v. Young's Market Company, LLC*, 2:09-cv-08730 DMG RC (C.D. Cal. 2010) and separately in state court in *Williams v. BioTab Nutraceuticals, Inc., et al.*, LASC Case No. BC 414808 (2011). These cases have no precedential value, especially in a different District where prevailing rates are lower.").

rates in the Eastern District of California are in the $400/hour range." *Id.* at *12.  The court then compared the requested rates to those prescribed under the Laffey Matrix, a widely recognized compilation of attorney and paralegal rates used in the District of Columbia, and frequently used in determining fee awards.  *Id.*  In comparison to the Laffey Matrix rates, adjusted for cost of living, the hourly rates requested by the class counsel in *Bond* were approximately 10 percent higher.  The court determined that a 10 percent "haircut" to class counsel's requested rates was justified.  Thus, for example, a requested hourly rate of $750 for a partner with more than 20 years of experience was adjusted to $675 per hour.  A requested hourly rate of $290 for an associate with two years of experience was adjusted to $261 per hour.[10]

Similarly, in *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 n. 1 (E.D. Cal. 2010), the court approved attorneys' fees where counsel's requested rates ranged from $350 per hour for an associate attorney with approximately four (4) years of experience to $525 per hour for a partner with 14 years of experience.

Based on the hourly rates found reasonable in *Bond* and *Vasquez*, only $300 per hour for attorneys with less than four years of experience is reasonable for this local community.  Specifically, in *Bond*, the Court awarded only $261 per hour for an associate with two years of experience.  In *Vasquez,* the court found reasonable a $350 per hour rate for an associate with four years of experience.  Based on these approved hourly rates, the Court finds that, for comparable legal services, the prevailing rate in the local community for attorneys with less than four years of experience is $300 per hour.  As such, attorneys with less than four years of experience will be awarded only $300 per hour, with the exception of Mr. Danas who is a partner at Initiative Legal Group but has been licensed to practice law for only two years.

Regarding the hourly rate requested by Mr. Danas, Class Counsel submitted a  declaration from Mr. Danas setting forth his experience justifying his hourly rate.  (Danas Decl., Doc. 64-2.)

---

[10] The version of the court's order in *Bond* that is published electronically on Westlaw contains a formatting error such that the entire text of the order does not appear on the electronic Westlaw publication.  The complete order is located on the court's electronic docket at number 59 in case 1:09-cv-01662-OWW-MSJ.

Although Mr. Danas graduated from law school in 2001 and has some years of experience as a law clerk in several law firms and as a judicial law clerk, he was not admitted to the bar of any state until 2010. (Danas' Decl., Doc. 64-2, ¶ 14.)  Thus, Mr. Danas' experience as a practicing attorney is necessarily limited to 2 years and awarding an hourly rate of $590 is unreasonable.  Thus, his hourly rate shall be reduced to the hourly rate requested for other attorneys with a similar number of years of experience with an increase that accounts for his position within the firm and his legal experience prior to his admission to the State Bar of California.  A reasonable hourly rate for Mr. Danas in this community is $365 per hour.

Further, although Mr. Theriault is a partner, his requested $610 hourly rate appears out of proportion to his six years of experience.[11]  As Class Counsel has not provided the Court with any additional information regarding Mr. Theriault's experience, his requested rate of $610 per hour is unreasonably high when compared to hourly rates in the local community and will be reduced to $490 per hour which is the rate requested for other attorneys who have more than 7 years of experience, but are not partners at the firm.  An hourly rate of $490 is commensurate with the hourly rates approved in *Bond*, 2011 WL 2648879, at *11-13 (awarding $540 per hour for work performed by a partner with more than 8 years of experience) and *Vasquez*, 266 F.R.D. at 491 n.1 (awarding $525 per hour for work performed by a partner with more than 10 years of experience)

The rates requested for Class Counsel from the Law Offices of Mark Yablonovich were supported by a declaration filed by Mr. Mark Yablonovich. (Yablonovich Decl., Doc. 60-3.) With the exception of the hourly rate requested for work performed by Mr. Coats, who has three years of experience, the requested hourly rates are reasonable. Consistent with the awards set forth above, Mr. Coats' hourly rate shall be reduced to $300, as he has fewer than 4 years of experience.

The adjustments to the hourly rates are as follows:

---

[11] As Class Counsel from Initiative Legal Group did not provide the Court with declarations from each of the attorneys who worked on the case, the only information available regarding the number of years of experience each attorney has in California or any jurisdiction is limited to the information provided by the State Bar of California.  The dates noted in the table below indicate each attorney's date of admission to the State Bar of California.

| Schedule of Fees for Initiative Legal Group | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Title** | **Hourly Rate** | **Adjusted Hourly rate** | **Hours Worked** | **Adjusted Fees** |
| Arthur Meneses (December 1982) | Partner | $695 | **$695** | 13.1 | $9,105 |
| Miriam Schimmel (December 1996) | Senior Counsel | $655 | **$655** | 14.3 | $9,367 |
| Matthew Theriault (September 2006) | Partner | $610 | **$490** | 83.7 | $41,013 |
| Glenn Danas (June 2010) | Senior Counsel | $590 | **$395** | 64.9 | $25,636 |
| Justin Levine (Feb. 2000) | Senior Counsel | $590 | **$590** | 24.8 | $14,632 |
| Payam Shahian (December 2003) | Senior Counsel | $520 | **$520** | 39.5 | $20,540 |
| Orlando Arellano (December 2004) | Senior Counsel | $490 | **$490** | 70.9 | $34,741 |
| Sang Park (December 2004) | Senior Counsel | $490 | **$490** | 237.0 | $116,130 |
| Eduardo Santos (December 2007) | Associate | $420 | **$420** | 13.0 | $5,460 |
| Joseph Liu (June 2008) | Associate | $395 | **$395** | 23.1 | $9,125 |
| Robin Hall (July 2009) | Associate | $395 | **$300** | 30.7 | $9,210 |
| Kevin Yang (December 2009) | Associate | $365 | **$300** | 91.3 | $27,390 |
| Teddy O'Reilly (December 2009) | Associate | $365 | **$300** | 30.5 | $9,150 |
| Alexandria Witte (December 2010) | Associate | $330 | **$300** | 26.4 | $7,920 |
| Valentina Mindirgasova (December 2010) | Associate | $330 | **$300** | 22.2 | $6,660 |
| Matthew Aguirre (June 2010) | Associate | $330 | **$300** | 267.5 | $80,250 |
| Rashan Barnes (January 2011) | Associate | $300 | **$300** | 34.4 | $10,320 |

| Brian Sperber (June 2011) | Former Associate | $300 | **$300** | 148.3 | $44,490 |
|---|---|---|---|---|---|
| Total | | | | 1,235.6 | $481,139 |

| Schedule of Fees for the Law Offices of Mark Yablonovich | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Title** | **Hourly Rate** | **Adjusted Hourly Rate** | **Hours Worked** | **Adjusted Fee** |
| Mark Yablonovich (December 1996) | Principle and Owner | $600 | **$600** | 72 | $43,200 |
| Neda Roshanian | 8th-Year Associate | $475 | **$475** | 17.7 | $8,408 |
| Michael Coats | 3rd- Year Associate | $350 | **$300** | 78.23 | $23,469 |
| Total | | | | 167.93 | $75,077 |

     **c.**     **The Adjusted Lodestar Supports the Reasonableness of the Fee Request**

After downward adjustments to the requested hourly rates, the total adjusted lodestar for Class Counsel is $556,216 ($481,139 + $75,077 = $556,216). Class Counsel's total attorneys' fee request is $443,424.72. This implies a negative multiplier of .79 ($443,424.72 /$556,216), which suggests that the negotiated fee award is reasonable. *See generally Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (in performing lodestar cross-check, court determined that negative multiplier "suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by class counsel"). In light of the resulting implied negative multiplier, the adjusted lodestar calculation supports the reasonableness and fairness of an award of attorneys' fees in the amount of $443,242.72. Moreover, although $443,242.72 is a significant fee, especially in light of the $700,000 recovery by the class, where attorneys' fees are awarded pursuant to a statutory fee-shifting provision and are not taken out of a common-fund, the proportionality of the attorneys' fees to the damages award is not the measure of reasonableness. *See, e.g., Vo v. Las Virgenes Mun. Water Dist.*, 79 Cal. App. 4th 440, 446 (2000) (affirming $470,000 fee award when plaintiff recovered only $37,500; under lodestar method, "party who qualifies for

a fee should recover for all hours reasonably spent unless special circumstances would render an award unjust").  As such, Class Counsel's request for attorneys' fees is GRANTED.

**C.      Plaintiffs' Request for Costs is Granted**

Plaintiffs request an award of $25,075.28 as non-taxable costs of the litigation.  Specifically, Class Counsel incurred and advanced $22,970.88 by Initiative Legal Group and $2,104.40 by the Law Offices of Mark Yablonovich.  (Doc. 60, 32:9-13.)  The bulk of these expenses were incurred for filing fees, photocopies, mediation fees, and postage and mailing.  (*See* Yablonovich Decl., Doc. 60-3; Meneses Decl., Doc. 60-6, ¶ 10.)  Such costs are routinely reimbursed in these types of cases. *See In re United Energy Corp. Solar Power Modules Tax Shelter Investment Sec. Litig.*, Nos. CV 87-3962 KN (Gx), CV 86-3538 KN (Gx),1989 WL 73211, at *6 (C.D. Cal. Mar. 9, 1989) (awarding $71,000 in cost reimbursement for filing fees, postage, telephone bills, photocopying, legal research assistance, deposition costs, and witness fees).  As such, Plaintiffs' request for costs is GRANTED.

**D.      Plaintiffs' Motion for Enhancement Awards to the Class Representatives is Granted**

Plaintiffs seek an enhancement award in the amount of $7,500 for Class Representative Michael Gong-Chun and $2,000 each for Class Representatives Gladibel Sotil-Gaillour, Brenda Bucaria, Jeff Brager, Tanya Lemons, and Eli Cruz.  (Doc. 60, 32:22-34:13.)  These payments are intended to recognize the time and effort spent by the Class Representatives for the benefit of Class Members, as well as the additional risks undertaken by the Class Representatives.

An enhancement award paid to a class representative must be assessed by the court because "[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard."  *Staton*, 327 F.3d at 975 (quoting *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989) (internal quotation marks omitted)).  Thus, in considering an enhancement award to a class representative, a court should weigh all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff

1    expended in pursuing the litigation[,] . . . and reasonable fears of workplace retaliation." *Staton*,

2    327 F.3d at 977 (internal quotation marks and citation omitted).

3         In this case, the Class Representative Michael Gong Chun assisted in the prosecution and

4    settlement of the Class' claims by (1) contacting Class Counsel; (2) reviewing his own employment

5    records he believed would assist Class Counsel in litigating the case; (3) reviewing the complaint

6    before it was filed; (4) assisting Class Counsel with discovery; (5) assisting with settlement

7    negotiations, (6) spending time evaluating the settlement; and (7) executing a general release of the

8    claims which is broader than the released signed by all other Class Members.  (Gong-Chun Decl.,

9    Doc. 60-4, ¶¶ 4-13.)  Plaintiff Gong-Chun estimates that he spent approximately 25 to 30 hours

10   assisting Class Counsel in the prosecution of the case.  (Gong-Chun Decl., Doc. 60-4, ¶ 14.)

11   Plaintiff, as Class Representative, undertook a financial risk that, in the event of a judgment in favor

12   of Defendant, he may have been personally responsible for any costs awarded to the Defendant. *See,*

13   *e.g., Whiteway v. FedEx Kinkos Office & Print Servs., Inc.*, No C 05-2320 SBA, 2007 WL 4531783,

14   at * 2-*4 (N.D. Cal. Dec. 17, 2007).   Additionally, there has been no objection to the Class

15   Representative enhancement award.

16        In support of their requested $2,000 Class Representative Enhancement awards, Plaintiffs

17   Gladibel Sotil-Gaillour, Brenda Bucaria, Jeff Brager, Tanya Lemons, and Eli Cruz provided

18   declarations stating they assisted in the prosecution and settlement of the Class' claims by (1)

19   regularly conferring with Class Counsel to discuss the status of the case and offer input; (2) assisting

20   Class Counsel is gathering evidence; (3) assisting Class Counsel with discovery, settlement

21   negotiations, and evaluating the settlement; and (4) executing a general release which is broader than

22   that signed by all the other Class Members.  (Brager Decl., Doc. 61, ¶¶ 8-11; Bucaria Decl., Doc. 60-

23   1, ¶¶ 8-11; Sotil-Gaillour Decl., Doc. 60-2, ¶¶ 8-11; Lemons Decl., Doc 60-5, ¶¶ 8-11; Cruz Decl.,

24   Doc. 65, ¶¶ 8-11.)   Each of these Class Representatives estimate that they spent 10 to 15 hours

25   assisting Class Counsel prosecuting this case.  (Brager Decl., Doc. 61, ¶ 12; Bucaria Decl., Doc. 60-

26   1, ¶ 12; Sotil-Gaillour Decl., Doc. 60-2, ¶ 12; Lemons Decl., Doc 60-5, ¶ 12; Cruz Decl., Doc. 65,

27   ¶ 12.)

28

The amount requested by the Class Representatives is consistent with other incentive awards in this Circuit.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving $5,000 to two plaintiff representatives of 5,400 potential class members in a $1.75 million settlement); *Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645, at * 5 (N.D. Cal. Feb. 16, 2011) (awarding $10,000 to two plaintiff representatives involved in case for five years and $4,000 to three representative plaintiffs participating in case for two years, from a $6.9 million settlement fund); *Hopson v. Hanesbrands, Inc.*, No. 08-cv-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (approving $5,000 award to one member of 217-member class from $408,420 settlement amount); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 award to each of four plaintiff representatives of 13,176-member class from $45 million settlement amount).

In view of the work the Class Representatives have performed on behalf of Class Members, the risk the Class Representatives undertook, and the Class Members' response to the Settlement, the requested payments are reasonable and appropriate.  The Court GRANTS Plaintiffs' request for a $7,500 Class Representative enhancement to Plaintiff Gong-Chun and a $2,000 Class Representative enhancement award each to Plaintiffs Gladibel Sotil-Gaillour, Brenda Bucaria, Jeff Brager, Tanya Lemons, and Eli Cruz.

## V.  ORDER

Based on consideration of the memorandums, declarations, and exhibits filed in support of the present motions, IT IS HEREBY ORDERED that:

1.  The Motion for Final Approval of the Class Action Settlement, the Motion for an Award of Attorneys' Fees and Costs, and the Motion for Class Representative Enhancement Awards are GRANTED, subject to the following findings and orders:

    a.  All terms used herein shall have the same meaning as defined in the parties' Settlement Agreement;

    b.  The Court has jurisdiction over the subject matter of this litigation and over the Parties to this litigation, including all Class Members;

c.   The Court certifies for settlement purposes a class of all non-exempt or hourly paid employees who worked for Defendants in California at any time from September 17, 2005, through February 16, 2012;

d.   The Court appoints Plaintiffs Michael Gong-chun, Gladibel Sotil-Gaillour, Brenda Bucaria, Jeff Brager, Tanya Lemons, and Eli Cruz as Class Representatives;

e.   Initiative Legal Group APC has demonstrated to the Court's satisfaction that it is experienced in class-action litigation and will adequately represent the interests of all Class Members.  The Law Offices of Mark Yablonovich also has sufficient wage-and-hour class-action experience.  Accordingly, the Court appoints Initiative Legal Group APC and the Law Offices of Mark Yablonovich as Class Counsel;

f.   The distribution of the Notice of Class Action Settlement, Claim Form, and Exclusion Form (collectively, "Class Notice") to the Class as set forth in the Settlement Agreement has been completed in conformity with the February 16, 2012, Preliminary Approval Order.  The Class Notice provided adequate notice of the proceedings and notice about the case, including the proposed settlement terms as set forth in the Settlement Agreement.  The Class Notice fully satisfied due process requirements.  The Class Notice was sent via U.S. Mail to all persons entitled to such notice and to all Class Members who could be identified through reasonable effort.  As executed, the Class Notice was the best notice practicable under the circumstances;

g.   The Court hereby approves the terms set forth in the Settlement Agreement and finds that the Settlement Agreement is, in all respects, fair, adequate, and reasonable and DIRECTS the parties to effectuate the Settlement Agreement according to its terms.  The Court finds that the Settlement Agreement has been reached as a result of informed and non-collusive arm's length

negotiations.  The Court further finds that Plaintiffs and Defendants have conducted extensive investigation and research, and their attorneys were able to reasonably evaluate their respective positions;

h.      The Court finds that the settlement will avoid additional and potentially substantial litigation costs, as well as delay and risks if the Parties were to continue to litigate the case.  Additionally, after considering the monetary recovery and prospective benefits provided as part of the Settlement in light of the challenges posed by continued litigation, the Court concludes that Class Counsel secured significant relief for Class Members;

i.      The Settlement Agreement is not an admission by Defendants or by any other Released Party, nor is this Order a finding of the validity of any allegations or of any wrongdoing by Defendants or any other Released Party.  Neither this Order, the Settlement Agreement, nor any document referred to herein, nor any action taken to carry out the Settlement Agreement, may be construed, or may be used, as an admission of any fault, wrongdoing, omission, concession, or liability whatsoever by or against Defendants or any of the other Released Parties;

j.      Defendants shall pay the Class Members pursuant to the claims procedure described in the Settlement Agreement;

k.      The Court approves the selection of Futures Without Violence as the cy pres beneficiary.  The Claims Administrator shall donate to Futures Without Violence according to the conditions set out in the Settlement Agreement.;

l.      The Court grants final approval of the payment of $15,000 to the California Labor and Workforce Development Agency ("LWDA") pursuant to the California Labor Code sections 2698, et seq., the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), for the release of Class Members' PAGA claims;

m.   The Court awards Class Representative Enhancements of $7,500 to Michael Gong-Chun and $2,000 each to Gladibel Sotil-Gaillour, Brenda Bucaria, Jeff Brager, Tanya Lemons, and Eli Cruz.  The Court finds that this amount is fair and reasonable in light of Plaintiffs' contributions to the litigation, for the notoriety and risk of serving as representatives for the class, and for providing Defendants a general release of claims;

n.   The Court hereby awards attorneys' fees $443,424.72 to Class Counsel. Further, the total expenses of $22,970.88 incurred by Initiative Legal Group and $2,104.40 for the Law Offices of Mark Yablonovich appear to have been reasonably and necessarily incurred in connection with the prosecution and resolution of this action; thus $25,075.28 ($22,970.88 + $2,104.40) is awarded as costs;

o.   The Court approves claims administration expenses in the amount of $25,000 payable to Rust Consulting;

p.   All Class Members were given a full and fair opportunity to participate in the Approval Hearing, and no members of the Settlement Class filed any objection or made an appearance at either the Preliminary Hearing or Final Approval Hearing.  Members of the Settlement Class also have had a full and fair opportunity to exclude themselves from the proposed settlement and the class.  Accordingly, the terms of the Settlement Agreement and of the Court's Order shall be forever binding on Participating Class Members and all other members of the Settlement Class who did not timely exclude themselves.  To effectuate the Settlement, the Court hereby orders that all Class Members who did not timely exclude themselves from the Settlement are barred, enjoined, and restrained from commencing, prosecuting, or asserting any Released Claim against any Released Party; and

1       2.       The Court enters a judgment of dismissal of the entire Action, and with prejudice, as

2   of the filing date of this Final Order, pursuant to the terms set forth in the Parties'

3   Settlement Agreement.  The Court retains jurisdiction over the parties to enforce the

4   terms of the Order and Judgment, and shall have continuing jurisdiction over the

5   construction, interpretation, implementation, and enforcement of the Settlement

6   Agreement in accordance with its terms.

7

8   IT IS SO ORDERED.

9   **Dated:    July 11, 2012**                    _____/s/ **Sheila K. Oberto**_____
                                          UNITED STATES MAGISTRATE JUDGE